**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| **WILLIAM SCHULTZ an individual, and HOME PLATE ENTERTAINMENT COMPANY, a California Corporation,** | : | |
| | : | |
| | : | |
| | : | |
| ***Plaintiffs*,** | : | |
| | : | |
| -against- | : | **1:24-cv-02852-ALC** |
| | : | |
| **WEATHERHUNTERS, INC., a New York Corporation, AL ROKER ENTERTAINMENT, INC., a New York Corporation, AL ROKER an individual and LISA TUCKER, an individual,** | : | <u>**OPINION AND ORDER**</u> |
| | | |
| ***Defendants*.** | | |

------------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

On April 15, 2024, Plaintiffs William Schultz ("Schultz") and Home Plate Entertainment

Company ("HPEC") (together "Plaintiffs") brought this breach of contract action against

Defendants Weatherhunters, Inc. ("WH"), AI Roker Entertainment, Inc. ("ARE"), AI Roker

("Roker"), and Lisa Tucker ("Tucker") (each individually a "Defendant," and collectively

"Defendants"). Dkt. No. 1, Compl. On October 15, 2024, Plaintiffs amended their Complaint.

Dkt. No. 25. Now before the Court is Defendant's Motion to Dismiss (the "Motion") the First

Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 30. Through their

Motion, Defendants seek the dismissal of all Plaintiff's claims except for breach of contract

against WH. *Id.* For the reasons that follow, Defendants' Motion is **GRANTED** in part and

**DENIED** in part. Plaintiffs are **GRANTED** leave to further amend the Amended Complaint with

respect to the dismissed claims.

# BACKGROUND

The Amended Complaint is 31 pages long with several detailed factual allegations in support of Plaintiffs' claims. The Court recounts here only those facts necessary for the resolution of the instant Motion.

## I. Procedural Posture

On April 15, 2024 Plaintiffs initiated this action against Defendants. Dkt. No. 1. On October 15, 2024, Plaintiffs filed an amended complaint. Dkt. No. 24. In their FAC, Plaintiffs allege causes of action for: violation of New York City Human Rights Law (N.Y.C. Admin. Code § 8–101 et seq.) ("NYCHRL") (against all Defendants) (Count I); violation of New York State Human Rights Law (N.Y. Exec. Law § 296, et seq. ) ("NYHRL") (against all Defendants) (Count II); breach of contract (against ARE and WH) (Count III); breach of implied covenant of good faith and fair dealing (against ARE and WH) (Count IV); breach of implied-in-fact contract (against ARE and WH) (Count V); promissory estoppel (against ARE and WH) (Count VI); quantum meruit (against ARE and WH) (Count VII); unjust enrichment (against ARE and WH) (Count VIII); intentional infliction of emotional distress (against all Defendants) (Count IX); negligence and failure to supervise and control (against Roker) (Count X); tortious interferences with contract (against ARE) (Count XI); and violation of the New York's "Whistleblower Statute" (against all Defendants) (N.Y. Lab. Law § 740) (Count XII).

On November 5, 2024, Defendants filed a Motion to Dismiss all but Plaintiffs' breach of contract claim against WH. Dkt. No. 29. On November 26, 2024, Plaintiffs filed an Opposition to Defendant's Motion (the "Opposition" or "Opp."). Dkt. No. 31. On December 10, 2024, Defendant filed a Reply to Plaintiffs' Opposition (the "Reply"). Dkt. No. 32. This Opinion and Order rules on Defendant's Motion.

## II. Factual Background[1]

### a. *The Parties*

Plaintiff Schultz is a television producer and executive in the world of production of animated television programming. FAC ¶ 16. Schultz is a Caucasian man. Plaintiff Home Plate Entertainment ("Home Plate") is Schultz's loan out company, under which he contracts out his television production services. *Id*. at ¶ 3. Defendant WH is a production company owned by Roker that contracted with Home Plate for Schultz's services in connection with its production of an animated children's television series for PBS called Weather Hunters (the "Series"). *Id*. at ¶¶ 10, 28–30, Am. Compl., Ex. A at 1. Defendant Roker also owns ARE. *Id*. at ¶ 10.

Defendant Roker is a leading African American media personality. *Id*. at ¶ 32. Defendant Tucker is a senior Vice President at ARE. *Id*. at ¶ 23. Tucker was assigned to oversee the production of the Series, and in effect the management and expenditure of millions of dollars provided by PBS and other third parties for this project. *Id*. at ¶ 25.

### b. *Events Giving Rise to this Lawsuit*

On January 9, 2023, WH and Home Plate entered into a Services Agreement (the "Agreement'). Under the Agreement, Schultz was to consult with and help WH manage all creative and business elements of the Series. In exchange for his services, Schultz. through Home Plate, in addition to other compensation, would receive: (1) a flat fee of $544,500, paid in installments and increasing by 3% for each series order after the initial 40 episode order; (2) a "Participation Fee" equal to 25% of WH's net revenue as defined in the Agreement; and (3) an "Executive Producer" and "Creative Development" credit.

PBS, which owned the Series, had a diversity, equity, and inclusion ("DEI") policy and

---

[1] The facts recited here are taken from Plaintiffs' FAC. Dkt. No. 25. The Court accepts as true the factual allegations in the FAC, as it must on a motion to dismiss.

made it a contractual requirement for all new children's programs. PBS supplied approximately 70% of the financing for the Series -with the stipulation that the Series would adhere to the approved DEI plan, which was designed to support recruiting, developing, mentoring and working with "new voices", in accordance with the approved DEI Plan.

ARE executive Tucker, endeavored to minimize efforts to embrace the DEI policy and supported and participated with those who looked for ways to evade it. For example, Tucker once attempted to coerce Jerry Brice, an African-American supervising producer, who wrote the PBS- approved DEI plan and had been specifically charged with deepening the production's relationships in the African-American community, to cosign their "workarounds" so that the production could just hire white writers, and not have to work with "BIPOC" writers. When Mr. Brice refused, he was reprimanded.[2]

On August 15, 2023, there was a meeting held via Zoom between Plaintiffs and the Series story editor. Plaintiffs contend that the story editor, enabled and supported by ARE management, claimed that "BIPOC (Black, Indigenous, and People of Color) writers 'sucked and were inexperienced.'" *Id*. at ¶ 40. The story editor further claimed that the production schedule for the Series could not be met if BIPOC writers were used to write the stories. ARE management proposed having "non-BIPOC writers write the stories" and then after the stories/episodes were shaped "hand[ing] off [the stories] to BIPOC writers." The production staff exchanged harsh words prior to the meeting's conclusion.

In early September 2023, Defendant Tucker reprimanded an African-American producer on the Series who was critical of Defendants' alleged failure to adhere to the DEI policy. Defendants blamed the producer for rising tensions on the production, and backed the

---

[2] The AC is silent as to what coercive tactics were utilized, or how Mr. Brice was reprimanded.

"incredibly racist and false statement by the Series' story editor that "BIPOC writers suck." Schultz vocally objected to the scapegoating of the African-American producer on the Series and complained about the racism, racial slurs, and dismantling of the DEI policy to ARE, Tucker, and anyone on the production team who would listen.

Plaintiffs contend that because of Schultz's complaints and vocal opposition, on February 22, 2024, pursuant to the terms of the Contract, WH provided Plaintiffs with a "cure notice," (the "Notice") pursuant to Section 8 of the Agreement. The Notice gave Schultz fifteen days to cure the deficiencies documented in the Notice. The Notice was signed by Tucker in her capacity of SVP Development and Production at ARE, referenced the Agreement, and purported to seek a cure for alleged and purported breaches by Schultz. On March 7, 2024, counsel for Schultz responded to the Notice refuting the purported breaches. On March 10, 2024, counsel for Schultz received notice from Counsel for Defendants that Schultz was being terminated based on his failure to cure the alleged breaches set forth in the Notice. On March 28, 2024, Counsel for Schultz received a Notice of Termination of the Agreement (the "Termination"). The Termination was based on the grounds set forth in the Notice.

### c.  *The Alter Ego Allegations*

Plaintiffs contend that ARE and WH are alter egos of each other. *Id*. at ¶ 10. In support of this allegation, Plaintiffs claim that ARE was WH's sole and exclusive decision-making authority and that ARE's executives dominated and controlled the operations of WH. *Id*. at ¶ 13. One example of this dominion and control is that the cure notice sent to Plaintiffs prior to Schultz's firing was sent by and on behalf of ARE, on ARE stationary, and signed by an ARE senior executive even though Schultz's contract was with WH. *Id*. at ¶ 14. Plaintiffs also allege that both ARE and WH operate from a shared premises located at 1357 Broadway, Suite 529, New York. *Id*. at ¶¶ 4-5.

**LEGAL STANDARD**

To survive a motion to dismiss made pursuant to FRCP 12(b)(6), a complaint must allege facts sufficient to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The Second Circuit has counseled that, at the pleading stage, a plaintiff faces only a minimal burden." *Bandyopadhyay v. State Univ. of New York*, 2021 WL 1209420, at *3 (E.D.N.Y. Mar. 30, 2021) (citations and internal quotations omitted). Therefore, the plaintiff's complaint need not contain "detailed or elaborate factual allegations." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014). However, the plaintiff's claims must be more than "speculative." *Twombly*, 550 U.S. at 545.

When ruling on a motion to dismiss, the court must also "draw all reasonable inferences in [plaintiff's] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In addition, the court must assume that all "well-pleaded allegations" are true. *Iqbal*, 556 U.S. at 679. This assumption does not extend to "legal conclusions" or "legal conclusion[s] couched as a factual allegation[s]." *Id.* at 678–79. Those the Court may properly disregard. *Id.*

**DISCUSSION**

Defendants move to dismiss all claims except for the breach of contract claim against WH. For the reasons that follow, Defendant's Motion is **GRANTED** with respect to the Fourth through Eleventh Causes of Action; the Motion is otherwise **DENIED**.

## II.    Plaintiffs Have Successfully Pleaded That ARE May Be The Alter Ego of WH

Plaintiffs assert several claims against Defendant ARE as an alter ego of WH. Am. Compl. at 17–29. Therefore, as a threshold matter, the Court must determine whether Plaintiffs' Amended Complaint contains enough factual allegations concerning their alter ego theory to survive a motion to dismiss. As explained in greater detail below, the Court concludes that Plaintiffs have successfully pleaded an alter ego theory. Therefore, Defendants' Motion is denied with respect to Plaintiff's alter ego theory.

In a federal suit based on diversity jurisdiction, courts in this district "apply the choice of law rules of the forum state — in this case New York — to determine what law governs alter ego or piercing the corporate veil analysis." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x *13, *15 (2d Cir. 2014) (citation omitted). New York's choice of law rules provide that the law of the defendant's state of incorporation governs the alter ego analysis. *Id*. Here, ARE and WH are both New York corporations; accordingly, New York law governs this claim. *Id*.

Under New York law, the question of whether one corporation is the alter ego of another "is fundamentally an issue of fact, which cannot be resolved on a motion to dismiss." *Sphere Dig., LLC v. Armstrong*, 2020 U.S. Dist. LEXIS 190516, at *13–14 (S.D.N.Y. Oct. 14, 2020). *See also Div. 1181 Amalgamated Transit Union - N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 2017 U.S. Dist. LEXIS 139882, at *11 (S.D.N.Y. Aug. 30, 2017) ("Determination of alter-ego status is generally a question of fact.") "In order to pierce the corporate veil under New York law, a plaintiff must establish that (1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Indus. Water Sols., Inc. v. Ravyn & Robyn Constr., LLC*, 789 F. App'x 920, 921 (2d Cir. 2020) (brackets removed; citation omitted). However, a "complaint need not (and

often cannot) plead every single factor that might play into an alter ego analysis; [therefore,] as long as there are some plausible allegations of dominion and control, a plaintiff can survive a motion to dismiss." *Sphere Dig., LLC*, 2020 U.S. Dist. LEXIS 190516 at *16–*17.

Here, Plaintiff successfully pleads factual allegations with respect to all three elements that plausibly support a finding that ARE is an alter ego of WH. *See supra*, § I.b. These allegations include that ARE executives controlled WH, ARE was attempting to evade its contractual obligations to implement PBS's DEI policy despite receiving funding to do so, that Schultz opposed ARE and its executive's desires to circumvent the DEI policy, and that as a result of this opposition, the Agreement was terminated.  There are thus enough factual allegations in the Amended Complaint to survive Defendants' Motion. The Motion is thus DENIED with respect to its request that the Court dismiss the Breach of Contract Claims Against ARE, and the Court proceeds with an analysis of the remaining issues.

### III.    Plaintiffs Have Failed to Plead a Claim for Negligence and Failure to Supervise and Control Against Roker

"To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted). Critically, the Amended Complaint fails to allege an employer-employee relationship between Roker and Tucker or Franklin. This failure alone means that dismissal of this claim is proper. *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 131 (2d

Cir. 2023) (affirming dismissal of negligent supervision claim where plaintiff failed to allege the existence of an employee-employer relationship).

Plaintiffs' contention that Roker was the 100% owner and control person of both ARE and WH, and thus he could exercise direct authority over the employees whose conduct caused Schultz harm does not save its argument. The Second Circuit has made clear that for a claim of negligent supervision to proceed in a case outside of the employee-employer context, a plaintiff must include allegations supporting the inference that the "defendants exercised a high degree of control over the principal tortfeasors." *Id*. Where such "an allegation that is absent from the amended complaint," dismissal of the negligent supervision claim is appropriate. *Id*. It is thus not enough for a Plaintiff to allege that a Defendant occupied a high position in a company, instead, the Plaintiff must allege facts that evidence supervision or control, such as that the defendant was responsible for the day-to-day operations of the employer's business. *Id*. The Amended Complaint includes no such allegations; accordingly, this claim is DISMISSED.

## IV.    Plaintiffs Have Successfully Pleaded a Claim for Discrimination

Plaintiffs assert violations of the retaliation provisions of both the NYSHRL and NYCHRL. Plaintiffs' claims are based on its factual allegations that Defendants, in resistance to PBS's mandatory DEI policy, excluded BIPOC persons from participating in the production of the Series and attempted to force Plaintiffs to assist in this exclusion. The same factual allegations are thus alleged in support of both claims. Defendant argues that Plaintiffs have failed to plead that Schultz is a member of a protected class, which is a requirement to state a claim under those statutes. Plaintiffs contends that "[b]oth the NYCHRL and NYSHRL protect individuals who oppose discriminatory practices, regardless of their own protected class status." Opp. at 17. The Court agrees with Plaintiffs.

a.  *Standard Under the NYSHRL*

The Second Circuit has held that "[t]he burden-shifting framework laid out in *McDonnell Douglas*, 411 U.S. at 802, governs retaliation claims under both Title VII and the NYSHRL. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). Under this framework, "[t]o make out a prima facie case of retaliation, a plaintiff must [demonstrate] that (1) [they] engaged in a protected activity; (2) [their] employer was aware of this activity; (3) the employer took adverse employment action against [them]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* at 125; *see also Jennings v. City of N.Y.*, 2023 U.S. Dist. LEXIS 35325, at *47 (S.D.N.Y. Jan. 26, 2023) (same). "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Jennings*, 2023 U.S. Dist. LEXIS 35325, at *48.

b.  *Standard Under the NYCHRL*

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that [they] took an action opposing [their] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *LeRoy v. Delta Air Lines*, 2022 U.S. App. LEXIS 29352, at *7 (2d Cir. Oct. 21, 2022) (citation omitted). "To survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that [they] engaged in protected activity." *Id.* "The plaintiff need not prove that [their] underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Id.* (internal quotation marks and citation omitted). "If the underlying employment practice was unlawful, however, that establishes the reasonableness of [the plaintiff's] belief. *Id.* (citation omitted).

10

c. *Analysis*

The elements of a prima facie case of retaliation under the NYCHRL are "identical" to Title VII, except that the NYCHRL employs a broader standard for an "adverse employment action" than its federal and state counterparts. *Smith v. City of New York*, 385 F. Supp. 3d 323, 345-46 (S.D.N.Y. 2019). "Unlike retaliation claims under Section 1983 and the NYSHRL, however, the retaliation complained of under the NYCHRL need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 576–77 (S.D.N.Y. 2011). Rather, the retaliatory act of which the plaintiff complains must "be reasonably likely to deter a person from engaging in protected activity." *Id*. (citation omitted). "[T]he plaintiff must also show a 'causal link' between the protected activity and the retaliatory act." *Id*. (citation omitted). "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127-28 (2d Cir. 2013) (bracket removed).

a. *Application*

Plaintiffs have alleged enough facts to survive a motion to dismiss with respect to both their NYCHRL and NYSHRL claims. Here, the adverse action complained of is Defendants' termination of the Agreement. This termination qualifies as an "adverse employment action." Plaintiffs also allege that they engaged in protected activity. The allegedly protected activity here was Plaintiffs' opposition to Defendants' attempts to ensure the hiring of white writers instead of BIPOC writers.

Defendants' contention that Plaintiffs fail to point to anyone impacted by this supposed policy does not alter the Court's conclusion: the statute prohibits both the attempt and execution of all discriminatory practices. *See* N.Y.C. Admin. Code § 8–107(6) ("It shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, ***or to attempt to do so***.") (emphasis added). Further, under N.Y. Exec. Law § 296(e) it is unlawful "[f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person ***because he or she has opposed any practices forbidden under this article*** or because he or she has filed a complaint, testified or assisted in any proceeding under this article." Schultz's alleged opposition to Defendants' purported scheme to hire white writers instead of BIPOC writers falls within the statute. Therefore, the mere fact that Defendants may not have succeeded in the alleged discriminatory scheme does not warrant dismissal of the claims against them. For these reasons, Defendants' Motion is DENIED with respect to the NYCHRL and NYSHRL claims.

## V.    Plaintiff's Claim for Breach of The Implied Covenant of Good Faith and Fair Dealing Fails Along with its Quasi-Contractual Theories

Both the Parties agree that a claim for breach of the implied covenant of good faith and fair dealing may not be maintained when it is duplicative of a breach of contract claim. *Alter v. Bogoricin*, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[T]he covenant of good faith and fair dealing is not distinct from the underlying contract[.]"). A corollary to this principle is that an implied covenant claim must fail where "a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (internal quotation marks omitted); *That's What She Said, Inc. v. Gutter Games Ltd.*, 2024 U.S. Dist. LEXIS 138014, at *50 (S.D.N.Y. Aug. 5, 2024). *See also Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

Here, Plaintiffs claim that Defendants breached the Agreement by, among other things, tendering the Termination following a "pretextual sham" which consisted of Defendants sending a "cure notice regarding alleged failures of performance on the part of Plaintiffs." Am. Compl. at 71–75. With respect to the implied covenant claim, Plaintiffs allege that Defendants breached the implied covenant "by wrongfully and illegally terminating the Agreement without cause, excuse or justification," and that Defendants engaged in "dishonest conduct . . . which included the illegal manufacturing of pretextual claims to attempt to justify the termination of the Agreement." *Id*. at 76–80. Given the above, the Court finds that both claims are predicated on the same factual allegations, namely, Defendants alleged "pretextual sham" with its tendering of the Notice and the subsequent termination of the Agreement. Plaintiffs' implied covenant claim is thus undoubtedly duplicative of its breach of contract claims. Accordingly, the claim for Breach of the Implied Covenant of Good Faith and Fair Dealing must be DISMISSED.

Plaintiffs' quasi-contract claims (i.e., its claims for Breach of Implied-In-Fact Contract; Promissory Estoppel; Quantum Meruit; and Unjust Enrichment) fail for substantially the same reason, namely the undisputed existence of the Agreement between the Parties. In general, Plaintiffs are correct that they are allowed to plead causes of action in the alternative. However, in suits alleging a breach of contract where there is no doubt as to the existence of a valid contract governing the dispute, "the availability of alternative pleading does not save a quasi-contract claim that duplicates a claim for breach of contract." *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 354 (S.D.N.Y. 2021). Here, every single one of Plaintiffs' quasi-contract claims duplicate their breach of contract claims. *See* Fifth Cause of Action (Breach of Implied-in-Fact Contract asserting a breach due to Defendants' attempt "to abruptly and erroneously terminate the implied agreement between the Mr. Schultz and WH" under which Schultz provided services

in connection with the Series; Sixth Cause of Action (Promissory Estoppel) asserting that

"Schultz was harmed because Defendants WH[] and A[RE] made clear and express promises to

him *in a written agreement* with regard to the compensation that he would receive in exchange

for the services that he provided." (emphasis added); Seventh Cause of Action (Quantum Meruit)

asserting that Schultz was damaged because he "provided his time and services to Defendants in

good faith *and pursuant to the terms of the January 2023 Agreement*. The time and effort that

was provided by Mr. Schultz on behalf of Defendants was valuable and a material portion of the

compensation was founded in the participation in Net Profits *in the Agreement that Defendants*

*have now terminated*." (emphasis added); Eighth Cause of Action (Unjust Enrichment) asserting

that "[a]s a result of Defendants' wrongdoing, Mr. Schultz was impoverished, and Defendants

were enriched at his expense. Specifically, *Mr. Schultz was impoverished by his provision of*

*services pursuant to the contract between the parties, for which Defendants, absent any*

*justification, wrongfully terminated*." (emphasis added). Accordingly, each quasi-contract claim

is appropriately DISMISSED. *See Quintanilla v. WW Int'l, Inc.,* 541 F. Supp. 3d 331, 354

(S.D.N.Y. 2021) (dismissing plaintiff's claims for unjust enrichment upon finding that Plaintiff's

unjust enrichment claim was duplicative of her breach of contract claim); *Wilson v. Kellogg Co.,*

628 F. App'x 59, 61 (2d Cir. 2016) (affirming dismissal of plaintiff's breach of implied contract

and unjust enrichment claims because there was an express contract that governed the dispute

between the parties); *O'Grady v. BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 504

(S.D.N.Y. 2015) (dismissing plaintiff's claims for implied contract, quantum meruit, and

promissory estoppel in an employment dispute where there was an employment contract between

the parties that the action arose out of).

## VI.    Plaintiffs Have Failed to Plead a Claim for Intentional Infliction of Emotional Distress ("IIED").

"To state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021) (quotation marks and citation omitted). To meet this standard, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id*. "Adverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims absent a deliberate and malicious campaign against the plaintiff." *Fertig v. HRA Med. Assistance Program*, 2011 WL 1795235, at *6 (S.D.N.Y. May 06, 2011).

Here, Plaintiffs' claims fail both the first and second elements of the test. Plaintiffs' allegations concerning Defendants conduct amount to the use of racial slurs in the workplace, as well as discriminatory statements and practices. *See supra* § I.b. These allegations, while concerning if true, do not rise to the level of egregiousness required to support an IIED claim. Nor do they plausibly allege that Defendants intended their actions to cause severe emotional distress. Actions similar to what Plaintiffs allege occurred here with respect to their IIED claim have been considered and rejected by both the Second Circuit and courts in this district. *See Specht v. City of N.Y.,* 15 F.4th 594, 606 (2d Cir. 2021); *Fertig v. HRA Med. Assistance Program*, 2011 WL 1795235, at *6 (S.D.N.Y. May 06, 2011).  Plaintiffs' IIED claim thus fails, and so it must be DISMISSED.

Case 1:24-cv-02852-ALC    Document 36    Filed 09/30/25    Page 16 of 18

**VII.    Plaintiffs Have Failed to Plead a Claim for Tortious Interference with Contract Against ARE.**

Plaintiffs allege that ARE tortiously interfered with their Agreement with WH as an alternative theory of recovery in the event that ARE is found not to have alter ego liability. Plaintiffs concede this alternative theory can only survive if their alter ego theory fails. "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Muddy Bites, Inc. v. Evergreen USA LLC*, 2025 U.S. Dist. LEXIS 182866, at *12 (S.D.N.Y. Sep. 17, 2025) (citation omitted). "With respect to the third element of a tortious interference with contract claim — the defendants' intentional procurement of the third party's breach without justification — it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third-party's contract with the plaintiff; instead, ***the evidence must show that the defendant's objective was to procure such a breach***." *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, 2016 U.S. Dist. LEXIS 35812, at *13-14 (S.D.N.Y. Mar. 18, 2016) (internal quotation marks and citations omitted) (emphasis added). The Amended Complaint includes no factual allegations concerning the third element of the test. Therefore, Plaintiffs' tortious interference claim is DISMISSED.

**VIII.    Plaintiffs Have Successfully Pleaded a Violation of New York State's Whistleblower Statute (N.Y. Labor Law § 740(2)(a)).**

New York State's Whistleblower Statute explicitly bars employers from "tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the

employee reasonably believes is in violation of law, rule or regulation." N.Y. Lab. Law §
740(2)(a). "Retaliatory action" is defined in the statute as "an adverse action taken by an
employer or his or her agent to discharge, threaten, penalize, or in any other manner discriminate
against any employer or former employee exercising his or her rights under this section, . . .
including but not limited to discharge, suspension, or demotion; . . . [or] actions or threats to take
such actions that would adversely impact a former employee's current or future employment." *Id*.
at § 740(1)(e). Therefore, to state a claim under Section 740, a plaintiff must plead: (1) activity
protected by the statute; (2) retaliatory action; and (3) [a] causal connection between the
protected activity and the adverse action. *Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d
315, 326 (S.D.N.Y. 2024).

For the reasons already discussed in the Court's analysis of Plaintiffs' NYSHRL and
NYCHRL claims, the Court determines has Plaintiffs have plausibly pleaded retaliation claims
under Section 740. Accordingly, Defendants' Motion is DENIED with respect to the
whistleblower claims.

### IX.    Leave to Amend the Complaint

Defendants request that the Court dismiss all but Plaintiffs' breach of contract claim
against WH with prejudice. Dkt. No. 30 at 18. Rule 15(a)(2) states "the court should freely give
leave when justice so requires," and the Supreme Court has instructed that "this mandate is to be
heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, the law is clear that the decision on
whether to grant leave to amend a complaint is "within the sound discretion of the court." *John
Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing
*Foman*, 371 U.S. at 178). Although highly unlikely, it is possible that some of the deficiencies
outlined above could be remedied with additional pleading. Therefore, the Court will afford

Plaintiffs the opportunity to further amend their Amended Complaint to attempt to cure its deficiencies. Defendant's request that Plaintiff's claims be dismissed with prejudice is thus **DENIED.**

**CONCLUSION**

For the reasons outlined above, Defendant's Motion is **GRANTED** with respect to the Fourth through Eleventh Causes of Action; the Motion is otherwise **DENIED**. Defendant's request that the claims be dismissed with prejudice is **DENIED**. Plaintiff is **GRANTED** leave to further amend the Amended Complaint, and must do so by October 20, 2025. The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. No.29.


**SO ORDERED.**

**Dated:  September 30, 2025**

      **New York, New York**                     **ANDREW L. CARTER, JR.**
                                                      **United States District Judge**